UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DEBORAH R. NELSON SEAMSTER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:13-CV-265 JD |
| | ) | |
| EDGEWATER SYSTEMS, | ) | |
| | ) | |
| Defendant | ) | |

## OPINION AND ORDER

Deborah Seamster filed a *pro se* complaint against Mansards Apartments and Edgewater Systems[1] in August 2013 claiming that those entities had violated her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Ms. Seamster alleged that Mansards Apartments refused to accommodate her disabilities and took money from her; her claims against that apartment complex were dismissed in February of this year. Still pending are Ms. Seamster's claims that Edgewater wrongfully removed her from the program that assisted her in paying her rent.

This cause is now before the court on Edgewater's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. In accordance with Appendix C to the Local Rules of the United States District Court for the Northern District of Indiana, entitled "Notice to *Pro Se* Litigant," Edgewater provided Ms. Seamster with the text of Federal Rule of Civil Procedure 56 and Local Rule 56-1 to assist her in responding to the company's summary

---

[1] Defendant Edgewater Systems for Balanced Living, Inc. says it was improperly sued as Edgewater Systems. For purposes of this order, the court will refer to the entity as Edgewater.

judgment motion. Ms. Seamster filed a timely response, and Edgewater a reply. For the reasons that follow, the court grants Edgewater's motion.

**FACTS**

The parties' dispute in this action relates to Deborah Seamster's termination from participation in the Shelter Plus Care Program in the Gary, Indiana area. Edgewater reports that the Program was implemented and is funded by the United States Department of Housing and Development; the Indiana Housing and Community Development Authority administers the Program in this state. The purpose of the Program is to provide "permanent housing in connection with supportive services to homeless people with disabilities," including "rental assistance and assistance for utilities for a variety of housing choices." Deft. Exh. 2, at 3. The Program uses grant funds "to pay the difference between the actual rent for a unit and 30 percent of the participant's adjusted income. . . . Grant funds can also be used to help offset utility costs paid by the participant if utilities are not included in the rent. Where rent does not include utilities, the tenant's contribution is reduced to allow for a reasonable utility allowance." Deft. Exh. 2, at 8-9. Shelter Plus will also pay, "when necessary, a security deposit in an amount up to one month's rent." Deft. Exh. 2, at 9. Edgewater reports that Edgewater Systems for Balanced Living, Inc. is part of the Shelter Plus Care Program; Edgewater administers the program locally by using grant funds to pay a portion of the rent for qualified participants.

Deborah Seamster entered into a Shelter Plus Care Program Agreement on January 3, 2013 to receive supportive housing services from Edgewater. Deft. Exh. 1 (Seamster Dep.), Exh. O. Ms. Seamster acknowledged when she signed the agreement that the rules of the Program had been explained to her, she would comply with all services outlined in her treatment plan,

maintain medication compliance, and attend psychiatric appointments, and she understood that "failure to follow through with the terms of [the] agreement will result in termination from the Shelter Plus Care Program." Seamster Dep., Exh. O. The agreement provides that a resident can be removed from the Program and have their rental assistance terminated based on any of the following: violation of the landlord-tenant agreement; engaging in illegal activity; moving to other HUD funded or subsidized housing; moving voluntarily or without notice; being incarcerated for more than 30 days or hospitalized for medical or psychiatric reasons for more than 90 days; submitting incorrect information; subleasing to another person; or failing to comply with the financial portion of the rental assistance. Seamster Dep., Exh. O.

Edgewater first placed Ms. Seamster in an apartment at the Lakeshore Dunes Apartments in Gary, Indiana. She was evicted from that complex on or about January 31, 2013. Edgewater says that based on her eviction from Lakeshore Dunes, Ms. Seamster could have been terminated from the Program, but, instead, Edgewater retained her in the Program and located another apartment for her at the Mansards Apartments in Griffith, Indiana. Ms. Seamster claims she slept in a rental truck for two to three weeks while waiting for another apartment. Pltf. Resp., at 2-3. Ms. Seamster signed her lease for an apartment at Mansards on February 14, 2013. Deft. Exh. 3, at 4.

Ms. Seamster says she understood that her portion of the monthly rent was $100.94 and that she was responsible for paying her utilities. She says she paid her portion of the rent from March 1 through July 1, 2013, but during that time received late fee and eviction notices, and late fees were added to the amount she owed. Ms. Seamster reports that she contacted her Shelter

Plus case manager, Mansards management, and the president of Edgewater, but she couldn't get the matter resolved. Resp., at 3.

On July 10, Ms. Seamster received a letter from her Shelter Plus case manager at Edgewater informing her that she was being terminated from the Program, effective August 10, for violations of her lease with Mansards Apartments and non-compliance with the financial portion of the rental assistance agreement with Edgewater. Mansards thereafter commenced eviction proceedings against Ms. Seamster based on its claims that she owed $2,140 in past-due rent and other charges under the lease and she violated the lease by verbally threatening numerous people and allegedly pointing a taser in their direction. Ms. Seamster maintains that all of those claims are untrue. On October 23, 2012, a Hammond City Court judge issued an order directing Ms. Seamster to vacate her apartment on or before October 29 and appear at a hearing on damages to be held in December.

On August 1, 2013, Ms. Seamster filed her complaint in this court alleging that her rights under the Americans with Disabilities Act were violated when Edgewater wrongfully terminated her from the Shelter Plus Care Program. She asks that the court order that she be reinstated to the Program and that the eviction process be stopped.

Edgewater has moved for summary judgment on Ms. Seamster's claims because, the company says, her termination from the Shelter Plus Program wasn't based on any disability.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

4

law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, will not defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007)*(quoting* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

## DISCUSSION

Edgewater says Ms. Seamster can't prevail on her claim that she was wrongfully prevented from participating in the Shelter Plus Care Program based on a disability. According to Edgewater, Ms. Seamster's removal from the Program was based on her non-payment of rent and past-due charges in violation of the terms of the Program. Edgewater says that when Ms. Seamster got behind in her rent and utilities payments, she was notified by her Shelter Care case worker and by Mansards Apartments personnel that her account was in arrears, and they requested that she

5

pay the past due amounts to Mansards. When Ms. Seamster didn't pay the amounts she owed, she was terminated from the rental assistance program. That termination, Edgewater says, came only after Ms. Seamster continued for months to violate the terms of her lease with Mansards Apartments and her agreement with the Program by refusing to pay the amounts due.

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish her claim that Edgewater discriminated against her in violation of the ADA, Ms. Seamster may proceed under the direct method of proof by presenting direct or circumstantial evidence of discrimination based on her disability, or under the indirect method, which requires her to show that (1) she suffers from a disability as defined in the statutes, (2) she is qualified to participate in the program in question, and (3) she was either excluded from participating in or denied the benefit of that program based on her disability. Novak v. Board of Trustees of So. Illinois Univ., 777 F.3d 966, 974 (7th Cir. 2015). "Title II case law . . . requires [Ms. Seamster] to show that, 'but for' [her] disability, [s]he would have been able to access the services or benefits desired." Wisconsin Comm'y Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 752 (7th Cir. 2006).

If Ms. Seamster establishes a prima facie case, the burden then shifts to Edgewater to articulate a legitimate, non-discriminatory reason for any alleged adverse action suffered by the plaintiff. Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 685 (7th Cir. 2014). If Edgewater comes forward with a legitimate, non-discriminatory reason for its action, the company is entitled to summary judgment unless Ms. Seamster presents "sufficient evidence that

[Edgewater's] proffered reason is a pretext for discrimination." <u>Novak v. Board of Trustees of So. Illinois Univ.</u>, 777 F.3d at 974; *see also* <u>Bunn v. Khoury Enterprises, Inc.</u>, 753 F.3d 676, 685 (7th Cir. 2014) ("[I]f a legitimate reason is produced, [Ms. Seamster] must prove by a preponderance of the evidence that [Edgewater's] stated reason is a lie.").

The court first notes that even though Ms. Seamster was previously found to be "disabled" under the terms of the Shelter Plus Program, *see* Deft. Exh. 2 (Shelter Plus Care Administration Manual), at 5-8, the Program's definition of "disabled" differs from the definition of "disabled" under the ADA. The Shelter Plus Care Administrative Manual provides that a person is considered to have a disability if that person "has a physical, mental, or emotional impairment which is expected to be of long-continued and indefinite duration; substantially impedes his or ability to live independently; and is of such nature that such ability could be improved by more suitable housing conditions." Deft. Exh. 2 (Manual), at 7-8. To establish a disability under the ADA, Ms. Seamster must show that she has a physical or mental impairment that substantially limits one or more of her major life activities, 42 U.S.C. § 12102(1)(A), which include functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). That Ms. Seamster was found to be "disabled" by the Shelter Plus Program to qualify for rental assistance doesn't mean that she meets the definition of "disabled" under the ADA. *Cf.* <u>Weigel v. Target Stores</u>, 122 F.3d 461, 466 (7th Cir. 1997) ("[T]he Social Security Administration's decision to grant disability benefits to Weigel is not determinative as to whether or not she may be considered a 'qualified individual' under the ADA."); <u>Weiler v.</u>

Household Fin. Corp., 101 F.3d 519, 523 (7th Cir. 1996) ("As is the case with any ADA plaintiff, Weiler must suffer from a 'disability' as defined in the Act to invoke the Act's protection."); Scott v. Kaneland Cmty. Unit Sch. Dist. No. 302, 898 F. Supp. 2d 1001, 1007 (N.D. Ill. 2012) ("[T]he definition of a disability under the ADA has been limited to the ADA context. . . . The mere fact that Scott may have deemed by the Board to satisfy the Board's criteria for a 'permanent disability' under Board Policy . . . does not mean that the Board deemed Scott to meet all the special requirements under the ADA to meet the definition of a 'disability.'"). To prevail, then, Ms. Seamster must establish that she suffers from a "disability" as defined by the ADA.

A review of the parties' submissions shows that Ms. Seamster hasn't come forward with sufficient direct or circumstantial evidence that Edgewater discriminated against her on the basis of her disability to proceed under the direct method of proof. Ms. Seamster has attached various documents[2] to her summary judgment response, but she hasn't explained how any of those documents would amount to direct evidence from which a reasonable jury could find that her disability was the sole or the but-for cause of Edgewater's decision to terminate her from the Shelter Plus Care Program. Nelson v. Board of Trustees of So. Illinois Univ., No. 12-cv-7, 2014 WL 2993708, at *7 (S.D. Ill. July 3, 2014).

Under the indirect method of proof, Ms. Seamster has presented no evidence to establish the first element of her prima facie case, *i.e.*, that she has a qualifying disability. Ms. Seamster says she suffers from PTSD and received that diagnosis before she moved to the Mansards

---

[2] Those documents include a copy of a "Move-In Information & Estimate Form" from Mansards Apartments; copies of blank receipts forms, labeled "rent receipts" and "utility receipts;" a record of her drug prescriptions from May 2012 through January 2014; various policy and informational documents from Edgewater; informational documents relating to the Shelter Plus Care Program; and a copy of the lease from her apartment at the Lakeshore Dunes Apartments.

8

Apartments, but she has presented no medical evidence to substantiate her claim of a mental disability. Ms. Seamster testified at her deposition that she has a physical disability, as well – a bolt in her ankle, Seamster Dep., at 45 – but, again, she has offered no medical evidence to support her claim of a physical disability. In fact, Ms. Seamster testified that the surgery on her ankle took place in 2004, her last medical evaluation by a doctor for that condition was in 2005, she isn't currently receiving medical treatment relating to her ankle, and she doesn't use a cane or crutch or require assistance to walk. Seamster Dep., at 90-91. Edgewater hasn't challenged Ms. Seamster's claim that she's disabled, but Ms. Seamster still has the burden of proof on the first element of her prima facie case: she must show that one or more of her conditions, her PTSD and/or her ankle condition, is an ADA-recognized disability, that is, a physical or mental impairment that substantially limits her in one or more major life activities. She hasn't done so. She hasn't come forward with evidence that would allow a reasonable jury to find that she has a physical or mental condition that qualifies as a "disability" under the ADA.

The second element of a prima facie case under the indirect method of proof requires Ms. Seamster to show that she is qualified to participate in the Shelter Plus Program. "To be qualified, [Ms. Seamster] must meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" Johnson v. Randle, 451 F. App'x 597, 600 (7th Cir. 2011) (*quoting* 42 U.S.C. § 12131(2)). The rules governing the Shelter Plus Care Program, *see* Deft. Exh. 2, contain certain guidelines that participants must meet. To be eligible for assistance under the Program, an individual must be homeless and must have a disability that (i) is in need of treatment of a long, continued, and indefinite duration, (ii) substantially impedes his/her ability to live independently, and (iii) could be improved by more suitable housing conditions. Deft. Exh. 2, at 5, 7-8. While Ms. Seamster

previously qualified for assistance under the Program, she hasn't addressed the question of whether she is currently qualified to participate in the Shelter Plus Care Program and, so, hasn't carried her burden of establishing the second element of a prima facie case. *See* Modrowski v. Pigatto, 712 F.3d 1166, 1169 (7th Cir. 2013) (Non-movant "must 'go beyond the pleadings' (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor.") (internal quotations and citation omitted).

"To establish the third element, [Ms. Seamster] must show [her] disability was the 'but-for cause' of the exclusion, that is, that [Edgewater] would not have excluded [her] had [she] not been disabled." Novak v. Board of Trustees of So. Illinois Univ., No. 12-cv-7, 2014 WL 2993708, at *6 (S.D. Ill. July 3, 2014). Edgewater maintains Ms. Seamster can't prevail because she can't establish that she was terminated from participating in the Program based on her disability. In support, Edgewater relies on the affidavit of Tyra Cooper, its Shelter Plus Care Clinical Coordinator, who reports that in May 2013 she received notification from Mansards Apartments that Ms. Seamster had failed to make rent and/or utility payments on various occasions. Deft. Exh. 4 (Cooper Aff.), ¶¶ 4, 14. Ms. Cooper says she called Ms. Seamster twice to talk to her about the past due rent and utility payments and to urge her to pay those amounts to Mansards. Ms. Cooper says Ms. Seamster insisted that her rent had been paid. Cooper Aff., ¶ 15.

Edgewater has also submitted a copy of Ms. Cooper's May 14, 2013 email to Ms. Seamster reminding Ms. Seamster that $412.10 for unpaid utilities and late fees was due and owing to Mansards Apartments. Seamster Dep., Exh. S. Ms. Cooper told Ms. Seamster that:

> The property managers at The Mansards Apartments have informed me that they have not received your monthly rent payments on time, nor have they received your payment for utilities. Please understand that failure to pay rent is the most

10

> frequent cause for Shelter Plus Care participants to lose their housing, and I am very concerned about the balance due from you. . . . The property manager at The Mansards also informed me that you have been notified in writing and that she has spoken to you directly about your balances. She stated that you flatly refused to pay what is owed. . . . [C]ontinued refusal to abide by the regulations that are stated in your lease agreement with The Mansards Apartments jeopardizes not only your ability to continue living on their property, but it may also result in permanent separation from the Shelter Plus Care Program.

Seamster Dep., Exh. S.

Ms. Cooper says that when she learned in July 2013 that Ms. Seamster still hadn't made the over-due payments to Mansards Apartments, she sent Ms. Seamster written notice of her termination from the Program based on the following: violation of the lease with Mansards Apartments; non-compliance with the financial portion of the rental assistance agreement provided by Edgewater; and failing to receive constant therapeutic services from Edgewater. Seamster Dep., Exh. T. The termination notice explained the procedure for Ms. Seamster to appeal the termination decision and advised Ms. Seamster that effective August 10, 2013, the rental assistance program would terminate and she would be responsible for paying 100% of her rent and utilities. Seamster Dep., Exh. T. Ms. Cooper says she also sent Ms. Seamster a list of other community resources available to her. Cooper Aff., ¶ 18.

Ms. Seamster says in response that Edgewater's reasons for terminating her from the Program are untrue. According to Ms. Seamster, she paid her rent from March 1 to May 1, 2013; she wrote a letter to Mansards explaining that the $100 she paid towards the security deposit should have been applied to her first month's rent; she wrote to Shelter Plus case manager Tyra Cooper to let her know that "Mansards was looking for the rent;" and she attempted to meet with Mansards' president "about the situation and Ms. Cooper's unprofessional handling of this matter." Resp., at 3. Ms. Seamster says she didn't violate the "behavioral contract" because she

had no disturbances or verbal interaction with staff or other residents until after the contract had ended and notice of her eviction had been served, and she continued to see her psychiatrist in order to receive necessary medications and services. Resp., at 4. In conclusion, Ms. Seamster claims Edgewater failed to protect her from harm, harassment, and being taken advantage of because of her mental disability by "not effectively informing, communicating or assisting in [her] care, transportation or services;" Edgewater failed to live up to its own Mission Statement of addressing her needs, understanding with compassion/respect, and maintaining her safety; and Edgewater not only violated her civil rights under the ADA, but "morally and intentionally took advantage of her mental condition of PTSD." Resp., at 4.

Ms. Seamster hasn't challenged the rules of the Program or argued that the rule permitting the removal of a participant from the Program for failure to comply with the financial portion of the rental assistance agreement wasn't applicable to her. Ms. Seamster hasn't challenged Edgewater's evidence showing that she failed to pay her rent and utility obligations in full and in a timely manner, nor has she presented any contrary evidence. Most importantly, Ms. Seamster hasn't pointed to any evidence that would support an inference that the real reason for Edgewater's action was because of her PTSD and/or the bolt in her ankle. Ms. Seamster's complaints that Ms. Cooper didn't effectively communicate with her and Edgewater didn't address her needs with understanding, compassion, or respect don't constitute evidence sufficient to support her claim of discrimination under the ADA.

Ms. Seamster must establish that the reason offered by Edgewater for terminating her from the Shelter Plus Care Program wasn't Edgewater's true reason, but was, in fact, a lie. <u>Novak v. Board of Trustees of So. Illinois Univ.</u>, 777 F.3d 966, 976 (7th Cir. 2015) ("[Plaintiff] must demonstrate that [defendant's] reason constitutes a mistruth – a lie on the part of the

defendant."). She hasn't done so. Ms. Seamster hasn't carried her burden of presenting evidence sufficient to permit a reasonable jury to find that she "is being excluded from participating in [the Shelter Plus Program] by reason of [her] handicap." Lyon v. Illinois High School Ass'n, No. 13 C 173, 2013 WL 309205, at *3 (N.D. Ill. Jan. 25, 2013). The unrebutted evidence shows that Edgewater (and Mansards Apartments) attempted for some months to accommodate Ms. Seamster to ensure that she didn't lose her housing or her ability to participate in the Shelter Plus Program. Edgewater is entitled to summary judgment on Ms. Seamster's claim that it violated her rights under the ADA.

## CONCLUSION

Based on the foregoing, the court **GRANTS** the summary judgment motion of defendant Edgewater Systems [docket # 59] and **DIRECTS** the Clerk to enter judgment for Edgewater Systems and against plaintiff Deborah Nelson Seamster.

SO ORDERED.

ENTERED: June 1, 2015

　　　　/s/ Jon E. DeGuilio　　　
Judge
United States District Court